**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

**SHIRLEY MCLAUGHLIN,**                    :

        **Plaintiff**            :      **CIVIL ACTION NO. 3:18-1894**

      **v.**                    :            **(JUDGE MANNION)**

**SCHOTT NORTH AMERICA, INC.,**   :

      **Defendant**            :

**MEMORANDUM**

Pending before the court is the defendant's motion for summary judgment. (Doc. 18). Based upon the court's review of the motion and related materials, the defendant's motion will be **GRANTED**.

By way of relevant background, the plaintiff filed the instant action on September 26, 2018, in which she alleges that she was discriminated against based upon her race and age when she was not hired as a warehouse supervisor. (Doc. 1). The plaintiff's complaint sets forth five counts: Count I alleges a claim under the Civil Rights Act/Title VII for discrimination based on race, national origin and color; Count II alleges a claim pursuant to 42 U.S.C. §1981 for discrimination based on race; Count III alleges a claim for a violation of the Pennsylvania Human Relations Act ("PHRA") based on race, national origin and color; Count IV alleges an age discrimination claim

based upon the Age Discrimination in Employment Act ("ADEA"); and Count V alleges an age discrimination claim pursuant to the PHRA.

On May 3, 2021, the defendant filed the pending motion for summary judgment (Doc. 18), along with a statement of material facts (Doc. 19) and supporting brief (Doc. 20). On May 24, 2021, the plaintiff filed a response to the defendant's statement of material facts, as well as her own counterstatement of material facts (Doc. 22), and a brief in opposition to the defendant's motion (Doc. 23). The defendant filed a reply brief in support of its motion for summary judgment (Doc. 24) and a response to plaintiff's counterstatement of material facts (Doc. 25) on June 7, 2021. A sur-reply brief was filed by the plaintiff on June 30, 2021. (Doc. 28).

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Cas. & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); see also Celotex, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v.

Zenith Radio Corp., 475 U.S. 574, 586 (1986)).  However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial."  Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman-La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

The undisputed facts in this case, as presented in the parties' statements of material facts, establish the following with respect to the relevant individuals. The plaintiff commenced her employment with Schott North American, Inc. ("Schott") in its warehouse in 2005. In or around 2013, she became the billing and shipping coordinator team lead and began to report directly to Joseph Roginsky, the then warehouse supervisor. Prior to becoming the team lead, the only discipline the plaintiff received while employed at Schott was a single write-up in 2006 for a shipping error. The plaintiff is Black and was born in 1965, putting her in her fifties at the relevant time.

Mr. Roginsky was the warehouse supervisor from approximately 2005 or 2006 until 2018. He was aware of the plaintiff's color, race, and national

origin. Mr. Roginsky is White. He was born in 1966 also putting him in his fifties at the relevant time.

Dana Roberts commenced regular employment with Schott in 2017, after having previously worked as a temporary employee beginning in 2016. On February 22, 2018, Ms. Roberts received the warehouse supervisor position at issue in this case. Prior to receiving the warehouse supervisor position, Ms. Roberts was a billing and shipping coordinator. Ms. Roberts is White and was born in 1981.

Eric Smith commenced his employment with Schott on June 26, 2017, when he was hired as the supply chain manager. He was aware that the plaintiff is older than Ms. Roberts. Mr. Smith is White and was born in 1963, making him close to sixty at the relevant time.

Michael Platt was the plant manager for the Duryea location where the warehouse supervisor position was located. He was the highest authority at that location for Schott.

As to the facts surrounding the warehouse supervisor position at issue, in 2018, that position opened when Mr. Roginsky, the existing warehouse supervisor, received a promotion. At the time, the plaintiff was a warehouse team leader. In the position of warehouse team leader, the plaintiff had directional and supervisory responsibilities to tell people what to do in the

course of the day and was qualified for the position of warehouse supervisor. Further, as a team lead, the plaintiff testified that she took numerous initiatives for the betterment of the operations of Schott. When Mr. Roginsky was absent, he selected the plaintiff to be responsible for keeping the warehouse running. Mr. Roginsky never documented any shortcomings on her part in doing so. Mr. Roginsky indicated that he selected the plaintiff because "she would just be the most logical person to do it" and "she was familiar with the operations of the office and how to run and how to keep the workflow flowing on the floor." The plaintiff also attended production meetings on Mr. Roginsky's behalf, sometimes as often as every other day for at least a year. Mr. Roginsky could have selected Ms. Roberts to perform his responsibilities in his absence, but he did not.

As the warehouse supervisor, Mr. Roginsky completed annual performance evaluations of the plaintiff in her position as team lead.[1] In his evaluation of the plaintiff for the period October 1, 2016, to September 30, 2017, Mr. Roginsky noted that the plaintiff exceeded her target bonus by 20%, which he identified as being "pretty good." He added no comments to her evaluation as to her work performance in any of the evaluated categories,

---

[1] Because Ms. Roberts's employment with Schott only began in late 2017, Mr. Roginsky never completed a performance evaluation of her.

such as communication skills, leadership skills, or relationship skills, but testified that he would have if he had any issues with any of them. The only comment which he wrote on the evaluation was under the description of professional knowledge, which was:

> Shirley has a very good knowledge and commitment of the processes and procedures that pertain to her position. With the implementation of the SP WM barcode system, several of those processes now need to be revised and improved. Shirley will need to work with her supervisor on these improvements to insure the overall success of their department.

On January 12, 2018, a meeting took place with the plaintiff, Mr. Smith, and Sandra Herman. At the meeting, Ms. Herman told the plaintiff, with regard to the warehouse supervisor position, "We brought you here today to let you know we're taking other avenues, that we were told you weren't interested in the position." The plaintiff responded "… I'm here today and I'm telling you that I'm interested in the position." It is the plaintiff's testimony that Ms. Herman reiterated that they were taking other avenues.

Ms. Herman's notes of the meeting indicate that she and Mr. Smith had been informed by Mr. Roginsky that the plaintiff was not interested in taking on new tasks if there was no compensation up front. On this basis, the plaintiff was informed that other candidates were being considered for the supervisor position, internally and externally. The plaintiff indicated at the meeting that she had done similar work previously and she, in fact, would be

interested in learning new tasks but did not think she would have time to do so. Ms. Herman then indicates that it was "reemphasi[zed] that [plaintiff] was still in consideration for the position since [they] [knew] that she would like to pursue learning the new role but that [they] [were] looking at other candidates both internal and external."

Mr. Smith's notes of the same meeting indicate that the plaintiff was told "at this time we do not feel she is a candidate for this position and we are going to be looking at other candidates." Mr. Smith also indicated that they had not, at that time, identified a candidate and that the job was being posted. Mr. Smith's notes reflect that all candidates for the position would be interviewed and the decision as to who would be offered the position would be based on "best fit."

Subsequent to the meeting, the plaintiff inquired of Mr. Roginsky by text as to whether he had said to Mr. Smith and Ms. Herman that she was not interested in the warehouse supervisor position. Mr. Roginsky replied by text, "That is not what I told them," and "Not true."

On January 18, 2018, Mr. Platt, the plant manager, sent an e-mail to Mr. Smith which indicated "I'll be standing behind the decision to move forward with Dana. Please advise me of any key points I need to

emphasize."[2] When questioned about the e-mail, Mr. Smith testified that he did not know why Mr. Platt wrote the e-mail and did not recall responding to the e-mail.

The warehouse supervisor position was posted sometime after January 18, 2018. The posting stated that people needed to apply by Monday, January 22, 2018. The posting reflected a candidate profile which included, among other things, "7-10 years business experience in Warehousing and distribution." Plaintiff submitted her resume/application on January 22, 2018.

On February 2, 2018, both the plaintiff and Ms. Roberts were interviewed for the position of warehouse supervisor. They were the only two candidates interviewed. With the exception of Dana Kegerreis, who was listed as a required attendee for the interviews[3], but testified that she had no recollection of participating in the interview process, all interviewing individuals recommended that Ms. Roberts be hired. Ultimately, Ms. Roberts was officially selected for the position.

---

[2] Although Mr. Platt was the plant manager, there is no indication from the parties' materials that Mr. Platt was actually involved in the process of hiring Ms. Roberts.

[3] In addition to Ms. Kegerreis, Mr. Smith, Mr. Roginsky, and plaintiff were listed as mandatory attendees.

Although she was interviewed for the warehouse supervisor position, the plaintiff contends that the decision to exclude her from consideration for the position and to hire Ms. Roberts was made before the interviews took place. The plaintiff bases this claim on the meeting with Mr. Smith and Ms. Herman on January 12, 2018, and Mr. Platt's e-mail to Mr. Smith dated January 18, 2018.

With respect to the hiring for this position, Mr. Smith testified that his role was to "select the winning candidate," but because this was a "critical role," he "wasn't the final say-so . . .  there was a consensus on the say-so." Interview notes taken by Mr. Smith indicate that "Areas of Concern" for the plaintiff were "team building, communication and relationship building." Mr. Smith noted that Ms. Roberts had "very good communication," was a "team player," and was "very reliable." Under areas of concern for Ms. Roberts, Mr. Smith noted "Professional," which he explained meant he wanted her to be more professional. When asked if plaintiff had much more experience in the warehouse than Ms. Roberts, he testified that she did, but indicated "[w]e are talking about who can fit the job description of a warehouse supervisor."

Mr. Roginsky provided input into the decision-making process for the warehouse supervisor position. Two weeks after the interviews, on February 16, 2018, Mr. Roginsky sent Mr. Smith an e-mail in which he indicated that it

was his recommendation that Ms. Roberts would be the best candidate for the supervisor position. In support of his recommendation, Mr. Roginsky indicated:

> In the short time Ms. Roberts has been with SCHOTT, she has shown the willingness to learn new tasks and take on additional job responsibilities without question. Her attendance has been near perfect. I have received positive feedback regarding Ms. Roberts interaction with departmental teams throughout the facility – The feedback being that Ms. Roberts is a team player and is extremely professional in the workplace. I feel if given the opportunity and placed in the appropriate environment, Ms. Roberts will excel and exceed our expectations.

(Id.). Upon questioning, Mr. Roginsky testified that he believed the decision to offer the position to Ms. Roberts was made within the week following the interviews, and he was not sure why he sent his e-mail when he did, after the fact. However, according to the plaintiff's complaint, the selection of Ms. Roberts for the position was announced on February 22, 2018, and that is when she was also informed of the decision. (Doc. 1, ¶¶53-54).

When asked why she believed Ms. Roberts was hired because of her age, plaintiff responded:

> "I don't see any other reason why she would have gotten the job other than age and race. I have been doing the job since 2005. I've been – I was Lucy Dimans' back-up prior to her getting laid-off in 2011. I would cover for her the whole month of February doing basically the same thing that I did as Roginsky's back-up. I trained Dana for shipping coordinator. I have more experience than Dana.

(Doc. 19-4, p. 38).

In addition to the experience factor, the plaintiff testified about other factors which she felt were relevant to her age discrimination claim. Specifically, only two weeks prior to her deposition on May 1, 2019, well after the promotion of Ms. Roberts, the plaintiff said she was informed by Diane Derkin, Mr. Smith's backup, that the company was trying to hire younger people, but that these younger people did not know what they were doing. The plaintiff testified that she inferred that Ms. Derkin was referring to Ms. Roberts and Meghan McDonald, who was a supervisor in customer service, but that they did not discuss these individuals specifically. The plaintiff testified that both Ms. Roberts and Ms. McDonald were in their mid- to late-thirties.[4] Ms. Derkin's comment is the only basis for the plaintiff's belief that either Ms. Roberts or Ms. McDonald was hired because of their age. The plaintiff testified that there were others who were hired in management positions who were under the age of forty, including Heather Williams, who was in her early thirties, and Kyle Noconnis, who was in his late twenties, but she had nothing to indicate that either Ms. Williams or Mr. Noconnis were hired because of their age. Of these, Ms. Roberts was the only one hired in

---

[4] Plaintiff testified that Ms. Derkin was in her late forties.

the warehouse. The plaintiff testified that there were no comments during the interview which indicated that age was a factor in hiring.

The plaintiff was also asked if she could point to anything that would indicate that race was a factor in hiring Ms. Roberts. She responded "no." She later indicated that she believes race was a factor because she is African American, and Ms. Roberts is not. Although she testified that no comments were made to indicate that race was a factor in hiring Ms. Roberts, the plaintiff testified that there had been "previous comments like slurs and stuff like that." The plaintiff has provided an affidavit[5] which indicates that, on one occasion after Ms. Roberts became employed by Schott in 2017, Mr. Roginsky said to plaintiff, "The only thing I like black is my coffee."[6]

Although she testified that she had no understanding of what took place with respect to the hiring or decision making process, the plaintiff testified that she believed that the hiring of a gentleman by the name of

_____

[5] The defendant argues that the plaintiff's affidavit is a sham affidavit provided in order to defeat summary judgment." Upon review, the court does not find that the plaintiff's affidavit constitutes a "sham affidavit" because it is not contradictory to a prior sworn statement or deposition. See Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007) ("A sham affidavit is a contradictory affidavit that indicates only that the affiant cannot maintain a consistent story or is willing to offer a statement solely for the purpose of defeating summary judgment.").

[6] Mr. Roginsky denies having ever made any racial comments to the plaintiff.

"Edwin" was based on race. The plaintiff testified that Edwin was a minority, who had been a part-time employee in the warehouse. He applied five or six times for a position in the main building, but he was never interviewed or hired. The plaintiff testified that, after she filed the instant action, Edwin was hired for a position in the main building, but it was only her belief that Edwin was hired based upon his race and that she had nothing other than that to support her claim.

Further in support of her raced-based claim, the plaintiff testified that, although Mr. Smith would persistently praise her directly by telling her, essentially, that she was doing good work, he denied her request to change her hours of work from 7:30 a.m. to 4 p.m. to 7 a.m. to 3:30 p.m. The plaintiff testified that there were at least three other white employees who had asked for changes of hours, all of which were approved. The only explanation given by Mr. Smith to the plaintiff for refusing her request was that it had been tried in the past to change everybody's hours in the warehouse and it didn't work, without acknowledging that the plaintiff was requesting only a half hour change for herself, not the entire warehouse.

With the above facts in mind, the defendant argues that the plaintiff's claims of race and age based discrimination fail on all counts. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) supplies the standard for

claims under §1981, Title VII, the PHRA, and the ADEA. <u>Pamintuan v. Nanticoke Mem'l Hosp.</u>, 192 F.3d 378, 386 (3d Cir. 1999); <u>Connors v. Chrysler Fin. Corp.</u>, 160 F.3d 971, 973 (3d Cir. 1998); <u>Jones v. School Dist. of Phila.</u>, 198 F.3d 403, 410 (3d Cir.1997). Under this standard, the plaintiff bears the initial burden of moving forward by making out a *prima facie* case, which requires the plaintiff to establish that: (1) she was a member of a protected class, (2) she was qualified for the position, (3) she suffered an adverse employment action, and (4) the circumstances of the adverse employment action give rise to an inference of discrimination. <u>See</u> <u>Jones v. Sch. Dist. of Phila.</u>, 198 F.3d at 410-11; <u>McDonnell Douglas</u>, 411 U.S. at 802. After the plaintiff establishes her *prima facie* case, the defendant must come forward with evidence that there is a legitimate, non-discriminatory reason for its actions.[7] <u>McDonnell Douglas</u>, 411 U.S. at 802. If the defendant presents a legitimate, non-discriminatory reason for its actions, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder

---

[7] The burden at this step is 'relatively light' with the defendant needing only to 'introduc[e] evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." <u>Tomasso v. Boeing Co.</u>, 445 F.3d 702, 706 (3d Cir. 2006)(citing Fuentes, 32 F.3d at 763). The defendant has provided that Ms. Roberts was hired based on her job performance and her performance during the interview. The plaintiff does not challenge the defendant's proffered reason, but makes arguments only with respect to meeting her *prima facie* and pretext burdens.

could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir.1994). The evidence which satisfies the *prima facie* case can satisfy the pretext element as well. Redley v. Whole Foods Mkt. Grp., Inc., 2021 WL 723274 (E.D.Pa., Feb. 24, 2021).

Here, the defendant argues that the plaintiff has failed to establish a *prima facie* race discrimination case. In doing so, the defendant does not discuss the first three *prima facie* factors, but argues only that the plaintiff's *prima facie* race discrimination case fails as the fourth element, i.e., that the plaintiff has failed to present evidence to establish circumstances that give rise to an inference of unlawful discrimination. The plaintiff responds that, in addition to the fact that she is Black while Ms. Roberts is White, she has provided evidence of racial animus. In doing so, she cites to one specific comment allegedly made by Mr. Roginsky that "The only thing I like black is my coffee." She further references the fact that "Edwin," a minority, was hired for a position in the main building only after the instant action was filed against defendant. Finally, she provides that Mr. Smith denied her request for a change in hours, while granting the request of at least three white employees.

As to Mr. Roginsky's alleged comment, in her opposing brief, the plaintiff substantively argues that Mr. Roginsky was a decisionmaker[8] and that his comment is evidence of bias on his part. The plaintiff argues that Mr. Roginsky was on the interview panel and made a direct recommendation with respect to Ms. Roberts's hiring, and that Mr. Roginsky's statement that "The only thing I like black is my coffee," is evidence that he was more likely than not acting out of a discriminatory motive when he recommended Ms. Roberts for the warehouse supervisor position over her.

Whether or not Mr. Roginsky was a decisionmaker, in considering whether stray remarks such as the comment allegedly made by Mr. Roginsky are probative of discrimination, the Third Circuit has considered the following factors: "(1) the relationship of the speaker to the employee and within the corporate hierarchy; (2) the temporal proximity of the statement to the adverse employment decision; and (3) the purpose and content of the statement." Parker v. Verizon Pa., Inc., 309 Fed. App'x 551, 558-559 (3d Cir. 2009) (quoting Ryder v. Westinghouse Elec. Corp., 128 F.3d 128, 133 (3d Cir. 1997)). "Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly

---

[8] Defendant denies Mr. Roginsky was a decisionmaker arguing that Mr. Smith had the final say as to who was hired for the warehouse supervisor position.

if they were made temporally remote from the date of decision." <u>Fuentes</u>, 32 F.3d at 767 (quoting <u>Ezold v. Wolf, Block, Schorr & Solis-Cohen</u>, 983 F.2d 509, 545 (3d Cir. 1992)).

Here, at her deposition, plaintiff testified that no comments were made about race during the interview process or at the time Ms. Roberts was given the position, but that there had been previous unspecified comments. Plaintiff did not elaborate during her deposition as to who made the comments, what those comments were, when they were made, or the context in which they were made. In response to the defendant's summary judgment materials, the plaintiff now presents her own affidavit which expands upon her deposition testimony and provides that, at some unknown time in 2017, Mr. Roginsky said, "The only thing I like black is my coffee."

Considering the first of the factors set forth above, the comment is alleged to have been made by Mr. Roginsky. Mr. Roginsky was plaintiff's supervisor in the warehouse, he was on her interview panel, and he was a member of a consensus which was to make a recommendation as to whether the plaintiff should be given the warehouse supervisor position. Regarding the second factor, there is no real indication as to temporal proximity. The plaintiff provides that the statement was made at some unknown time in 2017. As to the final factor, again, despite going above and beyond the

pleadings and discovery in this matter to provide an affidavit which elaborates on this comment claimed to be made by Mr. Roginsky, the plaintiff fails to provide any context at all in which the comment was made. This evidence, one comment made at some unknown time in 2017, in some unknown context, with no indication that it was related to the decision process, is insufficient to establish a *prima facie* case of discrimination.

After substantively arguing that Mr. Roginsky was, in fact, a decisionmaker, the plaintiff provides a string cite of cases and simply states "as to the applicability of 'cat's paw' theory of claim." Assuming the plaintiff is attempting to advance a cat's paw theory, this theory applies when a plaintiff seeks to hold her employer liable for the animus of a *non-decisionmaker*. See McKenna v. City of Philadelphia, 649 F.3d 171, 177 (3d Cir. 2011) (internal citation omitted) (emphasis added). At the summary judgment stage, a plaintiff advancing a cat's paw theory based on the alleged discriminatory animus of a non-decisionmaker must establish that there is a genuine issue of material fact as to (1) the animus of the subordinate, and (2) whether the subordinate's animus translated into discriminatory actions that caused the decisionmaker to take adverse employment action. Thomas v. Berry Plastics Corp., 803 F.3d 510, 515 (10th Cir. 2015). The Third Circuit has stated that "proximate cause" is the standard used: "The Supreme Court

has clarified that in 'cat's paw' cases the relevant question is whether a bias-motivated action was the proximate cause of the ultimate employment action." Smith v. Comhar, Inc., 722 F. App'x 314, 318-19 (3d Cir. 2018). Proximate cause "requires 'some direct relation between the injury asserted and the injurious conduct alleged" and excludes links that are "remote, purely contingent, or indirect.'" Jones v. Se. Pa. Transp. Auth., 796 F.3d 323, 330-31 (3d Cir. 2015) (quoting Staub, 562 U.S. at 419, 131 S.Ct. 1186). The plaintiff has presented no evidence of proximate causation. Moreover, as discussed above, whether Mr. Roginsky was a decisionmaker or not, Mr. Roginsky's comment constitutes nothing more than a stray remark.

To the extent the plaintiff claims that Mr. Smith denied her request for a change in hours, while the requests of at least three white employees were granted, the plaintiff has not established that these comparator individuals were similarly situated.[9] "Although 'similarly situated' does not mean identically situated, the comparator must be similar in all relevant respects."

---

[9] The sufficiency of evidence is typically an issue of fact for the jury; however, a court may grant summary judgment if no reasonable jury could find that the individuals identified by the plaintiff were similarly situated. Hampshire v. Bard, 793 F. App'x 75, 80 (3d Cir. 2019) (citing McDonald v. Village of Winnetka, 371 F.3d 992, 1002 (7th Cir. 2004)).

Durst v. City of Philadelphia, 798 F. App'x 710, 713 (3d Cir. 2020) (citing

Johnson v. Kroger Co., 319 F.3d 858, 867 (6th Cir. 2003)). Factors to be

considered include whether the comparators had the same supervisor, were

subject to the same standards, and had engaged in similar conduct. Id.

Here, the comparator individuals did not have Mr. Smith as their

supervisor. Moreover, there is simply no indication that these comparator

individuals referred to by the plaintiff were subject to the same standards as

the plaintiff. In fact, the plaintiff testified that these other individuals did not

work in the warehouse, but worked in other departments. As such, she has

failed to establish that these individuals were similarly situated to her or that

the scheduling denial was in any way based upon her race.

Finally, as to the plaintiff's claim that "Edwin," a minority, was hired for

a position in the main building only after the instant action was filed against

defendant, again, there is no indication that this individual was similarly

situated to the plaintiff. Moreover, the plaintiff admitted that she had no

understanding of what occurred with respect to Edwin's hiring and never

spoke to Edwin or anyone else about it. The plaintiff's claim that Edwin was

initially denied a position because of his race, and was only given a position

after the instant action was filed because the action alleges discrimination on

the part of defendant, is supported only by the plaintiff's speculation. This is

insufficient to oppose a motion for summary judgment. *See* Sarullo v. U.S. Postal Serv., 352 F.3d 789, 799-800 (3d Cir. 2003).

On the basis of the foregoing, the court finds that the plaintiff has failed to sufficiently establish a *prima facie* claim for race discrimination. Specifically, she has failed to establish that the circumstances surrounding the promotion of Ms. Roberts for the warehouse supervisor position over her give rise to an inference of race discrimination. As such, the defendant is entitled to summary judgment as to the plaintiff's race discrimination claims.

As to the plaintiff's claim of age discrimination, the only support for this claim is the plaintiff's speculation. The plaintiff contends that the failure to promote her must have been based upon age because she had more experience than Ms. Roberts and because of Diane Derkin's comment that the company was trying to hire younger people. The plaintiff testified that Ms. Roberts was never discussed during the conversation involving Ms. Derkin's comment, but that she inferred that Ms. Derkin was referring, at least in part, to Ms. Roberts. Other than her own speculation, the plaintiff has provided nothing to support her claim that Ms. Roberts was hired because of her age. As such, the court finds that the plaintiff has not established a *prima facie* case of discrimination based on age, and the defendant is entitled to summary judgment as to that claim as well.

In light of the foregoing, an appropriate order shall issue.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: March 28, 2023**
18-1894-01